470 So.2d 80 (1985)
Edmund P. RITA, Appellant,
v.
STATE of Florida, Appellee.
No. AX-240.
District Court of Appeal of Florida, First District.
June 6, 1985.
*81 Leonard Rosenberg, P.A., Miami, and J. Victor Africano, Live Oak, for appellant.
Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Edmund Rita appeals two orders of the Suwannee County Circuit Court. The first order denied his rule 3.850 motion for post-conviction relief based on alleged deprivation of his constitutional right to counsel; the second order revoked his probation and imposed a sentence of imprisonment. Rita raises three points on appeal: (1) Error in denying his 3.850 motion on grounds that he was on probation and thus not a prisoner in custody under sentence when the motion was made; (2) the legal insufficiency of the evidence to establish that he had constructive possession of the illicit drugs alleged as the basis for revocation of probation; and (3) error in failing to sentence him in accordance with the sentencing guidelines. We reverse on the first two points and find it unnecessary to reach the third.
In 1980 Rita was charged in Suwannee County with illegally possessing cocaine and narcotic paraphernalia and with illegally possessing controlled substances, i.e., Diazepam and Methaquaalone. He pled nolo contendere to all charges, reserving the right to appeal the denial of his motion to suppress. On September 16, 1980, he was adjudicated guilty and ordered to serve concurrent sentences of five years probation, conditioned on paying a $2500 fine and serving thirty days in jail. The ruling on the motion to suppress was affirmed on appeal. Rita v. State, 409 So.2d 185 (Fla. 1st DCA 1982).
The conditions of probation required, among other things, that Rita remain at liberty without violating the law and that he not possess illegal drugs. In August 1983 affidavits for revocation of probation were filed in the court below alleging that Rita had violated these conditions. The alleged violations arose out of an incident on June 21, 1983, in Dade County that resulted in criminal charges being filed against Rita for possession of more than 2000 pounds of cannabis.
After the affidavits were filed Rita was returned to Suwannee County and held in jail under a $150,000 bond pending his revocation hearing. While in jail awaiting the hearing, Rita filed a motion under rule 3.850, Florida Rules of Criminal Procedure,[1] alleging he was denied effective assistance *82 of counsel in the 1980 proceedings which had resulted in his probation. The state responded with allegations that Rita had been "adjudicated guilty and placed on probation" and was now "incarcerated in lieu of $150,000 bond on a violation of probation warrant." Consequently, the state contended, Rita lacked standing to seek post-conviction relief pursuant to rule 3.850 since he is not "a prisoner in custody under sentence of a court." The trial court agreed and denied the motion solely on this ground.
We hold that the trial court erred in ruling that Rita had no standing to make a rule 3.850 motion. This rule was formerly Criminal Rule 1 and has the same scope as the common law writ of habeas corpus. Gideon v. Wainwright, 153 So.2d 299, 300 (Fla. 1963). The meaning of "custody" as used in rule 3.850 is the same as that applied to determine the right or standing of a person to petition for a writ of habeas corpus. State v. Barber, 301 So.2d 7 (Fla. 1974). It has long been recognized that a person serving probation is sufficiently restrained in his liberty to have standing to seek review of the validity of his conviction in a habeas corpus proceeding. Ex Parte Bosso, 41 So.2d 322 (Fla. 1949). In this instance Rita was being restrained in jail pursuant to the order of probation and awaiting a hearing on revocation. Surely he was then being restrained in custody just as much as if he were serving the thirty days in jail imposed as a condition of probation under the so-called split sentence authorized by sections 948.01-.03, Florida Statutes. The appellate courts of this state have been routinely reviewing the denial of rule 3.850 motions filed by persons in custody under a split sentence imposing imprisonment and probation. See, e.g., Chaney v. State, 452 So.2d 1148 (Fla. 5th DCA 1984); Roberts v. State, 400 So.2d 475 (Fla. 5th DCA 1981); Bruno v. State, 395 So.2d 631 (Fla. 1st DCA 1981); Hollingsworth v. State, 394 So.2d 580 (Fla. 5th DCA 1981). Discerning no substantial reason for distinguishing between being a prisoner in custody while awaiting a revocation hearing and a prisoner in custody to fulfill a condition of probation, we conclude that Rita had standing to make his 3.850 motion in this instance.
The state necessarily concedes that Rita was in custody, but contends he was not under sentence within the meaning of that requirement in rule 3.850, and relies on Ferguson v. Stone, 415 So.2d 98 (Fla. 4th DCA 1982), and Bellcase v. State, 406 So.2d 116 (Fla. 5th DCA 1981), rev. den., 417 So.2d 328 (Fla. 1982), as authority for Rita's lack of standing under the language used in rule 3.850. We find that neither case is inconsistent with our holding. In Ferguson, unlike the instant case, the court withheld adjudication of guilt and placed the accused on probation. Ferguson was not in jail when the motion was filed. The court simply noted in a footnote that "petitioner is not a prisoner in custody under sentence, as Florida Rule of Criminal Procedure 3.850 requires," and could not seek post-conviction relief under that rule, citing Bellcase, 415 So.2d at 99, n. 1.
In Bellcase the petitioner was placed on probation after conviction (we assume after an adjudication of guilt, although the opinion is not clear on this point). His probation was conditioned on serving eleven months, thirty days in jail, which had been served when the motion was made. The court, citing Weir v. State, 319 So.2d 80 (Fla.2d DCA 1975), held that the petitioner was no longer in custody under a sentence since his probation was not a sentence under Villery v. The Florida Parole & Probation Board, 396 So.2d 1107 (Fla. 1980).
In Weir the petitioner had been adjudicated guilty of grand larceny in 1943 and sentenced to three years in state prison. More than thirty years later Weir moved to *83 have the judgment vacated and the record expunged on the ground that he had been unconstitutionally denied the right to counsel recognized in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and its progeny. Stating that "the customary vehicle for post-conviction relief is Rule 3.850," the court concluded that Weir had long ago served his entire sentence and could not be considered in custody under sentence within the meaning of that rule. 319 So.2d at 81. Acknowledging that Gideon was retroactive in application, the court held that Weir, even though he had completed his sentence, was nevertheless entitled to seek such relief and that the proper procedure was a petition for writ of coram nobis filed in the sentencing court.
It is perfectly apparent that Weir neither considered nor decided the question before us. Nor are we convinced that Bellcase is dispositive of this issue. State v. Barber, 301 So.2d 7 (Fla. 1974), remains good law unless the holding in Villery v. The Florida Parole & Probation Board, 396 So.2d 1107 (Fla. 1980), must be read as applying not only to the meaning of "sentence" as used in section 947.16(1), Florida Statutes (1979), governing the right to parole, but also to the term "custody under sentence," as used in rule 3.850. Villery, however, had no occasion to consider this language of rule 3.850, and we are convinced that Villery should not be so read. The problem with such an expansive reading of Villery is aptly described in the concurring opinion of Justice Overton. The Villery court was called on only to determine the meaning of "sentence" for parole purposes as used in section 947.16(1) in the context of a person on probation after serving time in prison pursuant to a split sentence under sections 948.01-948.03, Florida Statutes (1979), and the actual holding in that case is necessarily limited to the meaning of "sentence" under section 947.16(1). Therefore, our construction of "custody under sentence" in rule 3.850 is entirely consistent with State v. Barber, 301 So.2d 7 (Fla. 1947), and Ex Parte Bosso, 41 So.2d 322 (Fla. 1949), and is manifestly not inconsistent with the actual holding in Villery.
We next consider the sufficiency of Rita's motion on the merits, bearing in mind that the order below must be affirmed if the record reveals other competent grounds for doing so. Rita's motion alleged in part that he had advised his lawyer in the original proceeding, Mr. Taylor, that his girlfriend had placed the vials containing the alleged cocaine and the pouch containing the narcotic paraphernalia in his clothing when she ejected him from their home in Massachusetts during a domestic quarrel, that he had not placed any pills in his clothing, and that both he and the girlfriend would so testify; that he had told his lawyer he had not been aware of the presence of any contraband in his clothing prior to arrest; that his lawyer told him that the case would be thrown out on a motion to suppress, and that:
Without conducting any discovery whatsoever, Mr. Taylor filed a Motion to Suppress, had a hearing held upon said Motion, which Motion was denied. Immediately after the Court's denial of the Motion to Suppress, Mr. Taylor advised this Defendant to plead nolo contendere to all charges against him, reserving his right to appeal the denial of the Motion to Suppress. Mr. Taylor assured the Defendant that there was no sense going through a trial, as the Appellate Court would surely reverse the Court's ruling on his Motion to Suppress.
Relying totally on the advice of Mr. Taylor, the Defendant changed his pleas to all four (4) charges in these two (2) cases to nolo contendere. (R. 4-5).
Rita's motion then alleged that Mr. Taylor's advice was substantially below that of competent counsel and denied him effective assistance of counsel based upon the following acts and omissions:
a) That at the time the Defendant retained Mr. Taylor, he unequivocally told Mr. Taylor that he had no knowledge of any illegal drugs, paraphernalia or contraband being in his vehicle when arrested on January 12, 1980. The defendant *84 also told Mr. Taylor that subsequent to his arrest [his] ... girlfriend, Paula Sullivan, had told him that she had, in a fit of anger, put all of the alleged contraband (except the pills) and paraphernalia in the Defendant's clothes following a domestic spat in Massachusetts which resulted in the defendant picking up his clothes and belongings at Ms. Sullivan's house, putting them in his car and driving directly to Suwannee County, Florida; that his clothes had been in his car the whole time he was in Suwannee County.
b) That Mr. Taylor failed to conduct any discovery, other than to make a demand for the same; failed to depose any of the witnesses to request any independent chemical analysis of the alleged contraband found in the Defendant's car; failed to have a hearing set for several motions he had filed; failed to investigate the background and reliability of the confidential informant in this case, whose name was known to Mr. Taylor; failed to challenge the reliability of said confidential informant even though Mr. Taylor knew that the [confidential] informant had deliberately `set the Defendant up' and that the information he had furnished the Sheriff's Department was false; failed to investigate or make any inquiry as to where the [alleged] drugs in Case No. 80-68-CF were found, even though there is no mention of any of these drugs in the investigating officer's report... . (R. 5).
Rita also contends that the pills allegedly found in his clothing were placed there by the state's confidential informant. Appellant's brief argues that the specific acts and omissions alleged in the motion are sufficient to require an evidentiary hearing. These allegations show that Rita advised counsel he had no knowledge of the presence of the alleged drugs and that there was available testimony to support that defense; that counsel took no discovery, failed to investigate that defense, and did not depose listed state witnesses; that counsel proceeded with a motion to suppress the physical evidence without first investigating the reliability of the confidential informant in light of available evidence that the informant had lied to the police and had deliberately caused Rita to be arrested based on false information; and that counsel had advised Rita that the case would be thrown out on a motion to suppress and persuaded Rita to enter a nolo plea because there was no sense in going through a trial as the appellate court would surely reverse the ruling on the motion to suppress. Appellant's brief cites a number of decisions in support of this argument, but we see no reason to discuss them. The state apparently does not question the facial sufficiency of the motion, as its brief does not address this issue. Therefore, we conclude that the motion sufficiently states a claim for deprivation of the right to counsel under Knight v. State, 394 So.2d 997 (Fla. 1981), to require an evidentiary hearing and that it was error for the trial court to summarily dismiss the motion.
We next turn our attention to appellant's second point challenging the sufficiency of the evidence to establish his constructive possession of contraband drugs alleged as the ground for revoking probation. The conditions of probation included requirements that Rita remain at liberty without violating the law and that he not possess illegal drugs. The alleged violations of these conditions arose out of his arrest in Dade County in June 1983 on charges of illegally possessing more than 2000 pounds of cannabis in violation of section 893.135, Florida Statutes. Rita had been stopped while driving a refrigerator truck which contained bales of marijuana in the padlocked rear cargo compartment. Rita had no key that would unlock the rear compartment, and there were no windows or other openings between the cab and cargo compartment that would permit access to or physical observation of the materials inside. Rita denied having knowledge of the illicit cannabis in the truck. He claimed to be an automobile mechanic, and contended that he was called by telephone and told that a truck located at a bar in south Dade County was in need of repair. He stated *85 that he was instructed to pick up the truck and drive it to a destination in Miami. Rita was stopped enroute to the designated destination and taken to a police station, where the truck was searched. A passenger in the truck with Rita was detained for a short time, but was not charged. Law officers seized the cannabis found in the cargo compartment and seized all outer clothing worn by Rita. His clothing was subjected to chemical analysis, but no cannabis residue was found.
Evidence adduced at the revocation of probation hearing on January 5, 1984, established that Monroe County detectives received information regarding a marijuana off-loading operation from a confidential informant on the night of June 21, 1983. Upon arriving at the scene, the officers discovered a boat from which the odor of marijuana was emanating and found marijuana residue on the rear deck of the boat. The informant advised the officers that a white refrigerated truck had been loaded with marijuana from the boat by two unidentified white males. One of the officers testified that he had observed a white refrigerated truck parked near a restaurant earlier that evening and that he had passed the restaurant enroute to the scene and noticed that the truck was gone. The officer stated he had taken the tag number of the truck when he first observed it that night, and this information was provided to the Dade County police. A detective with the Dade County Police Department testified he heard a radio broadcast regarding the truck and was subsequently notified that other officers had stopped a truck on the turnpike. He went to the location and observed that the truck fit the description provided by the Monroe County police. He testified, "As I walked up next to the truck, I could smell the odor of marijuana coming from it." He thereupon arrested Rita and a second man who had been standing near the truck when he arrived, and took both men and the truck to the police station, where the truck was subsequently searched pursuant to a warrant, leading to the discovery of approximately 3500 pounds of marijuana in the rear cargo compartment. Rita was questioned by detectives of the Metro-Dade Police Department following his arrest, and told the detectives that he had been asked by an unidentified man to drive the truck from the bar in south Dade County to a parking lot in Dade County and that he had been provided only with the ignition key, did not have the keys to the cargo compartment which was secured by two locks, and had no knowledge of its contents.
The court below found that Rita had violated the conditions of probation, commenting in part:
[T]he odor was there. That's not been contradicted by anything in the testimony there, that you could smell it, just plain and simply within his knowledge. He certainly had control of the vehicle, whether he could get into the back with keys or with something to cut the locks, it really makes no difference.
(R. 119). The court specifically concluded:
[T]here's no doubt that the State has met its burden of proof here, that Mr. Rita certainly had knowledge and had possession and control over [the marijuana]....
* * * * * *
I find that he has violated his probation on both charges, in that he failed to remain at liberty without violating the law and that he ... had possession... .
(R. 120-121).
The burden of proof for revocation of probation based upon the alleged commission of a crime is by the greater weight of the evidence, not beyond a reasonable doubt. Miller v. State, 420 So.2d 631 (Fla.2d DCA 1982). Probation may not be revoked unless there is sufficient evidence to satisfy the conscience of the court that a substantial violation of the conditions of probation has occurred. Bernhardt v. State, 288 So.2d 490 (Fla. 1974). Where revocation is predicated on the commission of a crime, mere suspicion that the probationer was involved in criminal activity is not sufficient. Miller v. State, supra; Pass v. State, 436 So.2d 1062 (Fla.2d DCA 1983). The law governing criminal liability *86 for constructive possession is relevant in determining the sufficiency of the evidence to warrant revocation of probation based on a criminal act. Clark v. State, 402 So.2d 43 (Fla. 4th DCA 1981); Coley v. State, 393 So.2d 60 (Fla.3d DCA 1981).
We hold that the evidence presented at the revocation hearing was legally insufficient to establish that Rita had constructive possession of the cannabis found in the locked cargo compartment of the refrigerator truck. Mishmash v. State, 423 So.2d 446 (Fla. 1st DCA 1982); Sindrich v. State, 322 So.2d 589 (Fla. 1st DCA 1975); Harris v. State, 307 So.2d 218 (Fla.3d DCA 1974), cert. den., 315 So. 195 (Fla. 1975). Accordingly, the order revoking probation must be reversed.
The elements of constructive possession were recently stated in Brown v. State, 428 So.2d 250, 252 (Fla. 1983):
Constructive possession exists where the accused, without physical possession of the controlled substance, knows of its presence on or about his premises and has the ability to maintain control over said controlled substance. To establish constructive possession, the state must show that the accused had dominion and control over the contraband, knew the contraband was within his presence, and knew of the illicit nature of the contraband. If the premises where contraband is found is in joint, rather than exclusive, possession of a defendant, however, knowledge of the contraband's presence and the ability to control it will not be inferred from the ownership but must be established by independent proof.
In Sindrich v. State, supra, the appellants, both college students, were hired to drive a rented truck from Miami to Columbus, Ohio. Out of their presence the cargo area was loaded and padlocked and the key was retained by their employer. Both denied any knowledge of the contents of the locked cargo area. They failed to stop at an agricultural inspection station and were stopped by an inspector who requested permission to examine the locked cargo area. Forced entry into the cargo area by the inspector revealed illicit drugs. Holding the evidence insufficient to establish appellants' constructive possession, the court reversed appellants' convictions, stating:
In the case sub judice there was no evidence that the Appellants had exclusive control or access to the cargo area where the cannabis was found. The uncontradicted evidence before the jury was that the truck was loaded out of their presence, that they did not have a key to the locked cargo area, and that they did not know of the contents... . Mere presence of the Appellants where the drugs were found was not sufficient to sustain a conviction of possession (citations omitted)... . While we concur in the lack of wisdom on the part of Appellants in their venture, such a failure to observe contents of the cargo or require a larger fee may be poor judgment but not an inference of knowledge sufficient to sustain a verdict of guilt for possession of drugs.
322 So.2d at 591-92.
The court below relied in great part upon the investigating officer's testimony that he could smell the marijuana as he approached the refrigerator truck. But the mere presence of marijuana is not sufficient evidence of knowledge. Mishmash v. State, 423 So.2d 446 (Fla. 1st DCA 1982). In that case the court observed that law enforcement officials trained in the detection of contraband have no difficulty recognizing both the odor and the packaging of marijuana, but the court would not indulge the presumption that members of the public have the same capacity in the absence of evidence to that effect.
There is no evidence in this case from which it can be inferred that Rita recognized the odor of marijuana, nor is there evidence identifying him as a person present when the marijuana was loaded into the locked vehicle. Even though Rita's explanation to the police may be suspect and of questionable credibility, there is simply no evidence legally sufficient to establish Rita's knowledge of the illicit cargo.
*87 The state argues that the trial court's order should be affirmed on the authority of State v. Farrugia, 419 So.2d 1118 (Fla. 1st DCA 1982). In that case both defendants alternated in driving a pickup with a camper shell and were stopped by an agricultural inspector for passing the station. An odor of marijuana was detected when the vehicle was stopped. An operable window separated the cab from the cargo area. The court reversed an order dismissing the information charging the defendants with trafficking in cannabis, and rejected "appellants' contention that they may transport illegal drugs in the highways of this state with impunity so long as they do not have in their immediate possession keys to the locked cargo area containing the contraband and have stored no personal effects in the cargo area." 419 So.2d at 1120. The fact that an operable window separated the cab from the cargo area materially distinguishes Farrugia from the facts in this case. We are supported in this conclusion by the decision affirming the dismissal of the charges filed in Dade County against Rita that gave rise to this revocation proceeding. State v. Rita, 451 So.2d 894 (Fla.3d DCA 1984), rev. den., 459 So.2d 1041 (Fla. 1984).[2]
The evidence being legally insufficient to prove constructive possession, the order revoking probation is reversed with directions to dismiss the revocation proceedings.
In view of our disposition of the order revoking probation, it is not necessary to consider Rita's third point on appeal.
REVERSED and REMANDED.
ERVIN, C.J., concurs.
MILLS, J., dissents with opinion.
MILLS, Judge, dissenting:
I dissent. I would affirm on all issues.
The trial court correctly ruled that Rita lacked standing to file a 3.850 motion because he was on probation and was not in custody "under sentence" when the motion was filed. Rule 3.850 clearly states that a defendant must be "under sentence" and the record clearly shows that Rita was not "under sentence" when he filed the 3.850 motion.
The trial court correctly ruled that Rita had constructive possession of marijuana and correctly revoked his probation. Under the evidence presented to the trial court it could have reached no other conclusion. *88 The testimony of Rita is unbelievable.
The trial court correctly sentenced Rita. It properly sentenced him to a term exceeding the guidelines of Rule 3.701. It clearly stated a clear and convincing reason for exceeding the guidelines in writing. The trial court's reason was that Rita committed a drug offense while on probation for a prior drug offense. The sentence did not exceed the statutory sentence.
I would affirm the trial court in all respects.
NOTES
[1] Rule 3.850, Florida Rules of Criminal Procedure, reads in part:

A prisoner in custody under sentence of the court established by the laws of Florida claiming the right to be released upon the ground that the judgment was entered or that the sentence was imposed in violation of the constitution or laws of the United States or of the state of Florida ... may move the court . .. to vacate, set aside, or correct the judgment or sentence.
[2] Rita filed a motion to dismiss the charge of possessing marijuana pursuant to rule 3.190(c)(4), Florida Rules of Criminal Procedure, in the Dade County circuit court. The order granting the motion recited in part:

(2) In order to establish a prima facie case of guilt against Rita, who did not have actual exclusive possession of the marijuana, the state must establish that Rita had constructive possession of the marijuana contained in the padlocked rear truck body. Hively v. State, 336 So.2d 127 (Fla. 4th DCA 1976).
(3) The state was, therefore, required to demonstrate three elements: Rita's ability to exercise dominion and control over the contraband; his knowledge of the presence of the contraband; and his awareness of the illicit nature of the contraband. Wale v. State, 397 So.2d 738 (Fla. 4th DCA 1981).
(4) If, as here, the premises where contraband is found is joint, rather than exclusive possession of a defendant, knowledge of the contraband's presence and the ability to control it will not be inferred from the ownership but must be established by independent proof. Frank v. State, 199 So.2d 117 (Fla. 1st DCA 1967). There is no such independent proof under the facts of this case.
(5) The state has failed to establish Rita's ability to exercise dominion and control over the contraband which could not be observed or reached from the cab portion of the truck. Kuhn v. State, 439 So.2d 291 (Fla.3d DCA 1983).
This order of dismissal was affirmed by the Third District Court of Appeal, citing "Sindrich v. State, 322 So.2d 589 (Fla. 1st DCA 1975), and Harris v. State, 307 So.2d 218 (Fla.3d DCA 1974), cert. den., 315 So.2d 195 (Fla. 1975); cf. State v. Farrugia, 419 So.2d 1118 (Fla. 1st DCA 1982) (defendants had physical access to cargo area of truck by way of a `pass through' window in the truck cab.)" 451 So.2d at 894.
Rita filed in the case sub judice a motion to dismiss the revocation of probation proceeding on grounds that the decision in the Dade County case was determinative of the constructive possession issue by reason of the doctrines of former jeopardy, collateral estoppel, and res judicata. This motion was denied. We do not consider any of these arguments since they were not presented on this appeal.